## BRANTLEY *vs.* GUNN.

[BILL IN EQUITY BETWEEN JOINT PURCHASERS OF LAND RESPECTING TRANSACTIONS UNDER CONTRACT FOR DIVISION—STATEMENT OF ACCOUNT.]

1. *Value of rents, how ascertained on reference.*—In taking an account of rents in the master's office, the witnesses should depose to the money value of the rents: proof of a custom to receive a part of the crop as compensation for the rent, is improper, because it tends to multiply the issues, and thus to embarrass the investigation.

2. *General exceptions to report.*—An exception, including distinct matters, as to some of which the report is free from error, may be unconditionally overruled; or, in the discretion of the chancellor, it may be sustained in part, and overruled in part, unless it be so specially framed as to prevent such partial allowance.

3. *Damages to land from clearing, how ascertained.*—In ascertaining the injury to

lands from clearing, the inquiry is limited to the effect on the market value of the land at the time of the clearing: deterioration from cultivation of the soil, though it might enter as an element into the value of the use and occupation, is too remote to be considered the legal consequence of the act of felling the timber.

4. *General objection to evidence.*—A general objection to a mass of testimony, of which a portion is legal, may be either overruled or sustained, since the court is not bound to sift the evidence; and this rule applies to proceedings before the master.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by James Brantley against Larkin R. Gunn, and the merits of the case were decided in favor of the complainant at the June term of this court, 1852, as shown by the report in 21 Ala. 633, to which reference is made for the material facts. In regard to the matters of account between the parties, the opinion then pronounced contained the following directions: "The complainant is clearly entitled to a decree; but, as the agreement between the parties was, that Gunn should be entitled to hold the lands to indemnify him against his suretyship for Brantley, a decree could not be properly rendered, which would have the effect of changing the contract which the parties themselves have made. Brantley is entitled to the portion of the land which he was to take upon the division, all lying north of Osenappa creek, on the repayment of the amount which Gunn has paid. He is entitled to the rents and profits actually received during the time the latter has been in possession, as well as those which he might have realized by reasonable care and prudence, or by ordinarily good husbandry; and he is entitled, also, to full indemnification for the injury which the land has sustained by the unauthorized act of the trustee [Gunn] in possession. Gunn is not entitled to compensation for improvements made by him under a title procured by fraud. The decree of the chancellor must be reversed; an account must be taken by the master, of the rents and profits of the 223 acres, from the 1st January, 1841, with interest on the same each year, and also of the consequential damages which have been done to the land by Gunn by clearing the same; Brantley must be charged with the amounts paid by Gunn as surety for the

amount due from him for the purchase money of the 223 acres, and the costs of the suit at law, with interest upon such amounts from the time of their payment by Gunn; also, with the sum of $385,77, with interest from December 7, 1838; if such rents and profits, with the interest and damages, exceed the charge against Brantley, a decree must be rendered against Gunn for the excess, and the title to the 220 acres decreed to Brantley; and if the charges against Brantley exceed the amount of the rents, profits and damages taken on such account, a decree must be rendered, that he pay the same within a short day, or that the 220 acres of land be sold, and the proceeds applied to the payment of the same, with interest, and that, he be forever barred by such sale of all interest or equity in the premises."

The cause having been remanded, the chancellor, at the May term, 1853, rendered the following decretal order: "It is ordered, that the register of this court, as master in chancery, proceed without delay to take and state an account of the rents and profits of the land claimed by the complainant, commencing with the 1st January, 1841; on which he will compute interest from the end of each year, on the rents and profits for the year, up to the first day of the next term of this court. He will also inquire, ascertain and state the amount of the consequential damages which have been done to the land claimed by the complainant, by the defendant clearing the same. He will further ascertain and state the amount due from the complainant to the defendant, for the purchase money of the land claimed by complainant, with the costs of the suit at law brought by Dozier Thornton against defendant; and on this money and costs the register will compute interest, from the time of payment by the defendant, until the first day of the next term of this court. He will also compute interest on the $385,77 paid by the defendant to the complainant, from the 7th December, 1838, until the first day of the next term of this court. He will so state his account as to exhibit the said rents, profits, interest and damages to which the complainant is entitled, on one side of the account; and the purchase money paid for the complainant by the defendant, the costs of the action at law, the money paid by the defendant to the complainant, with the interest upon

said respective sums, upon the other side; and then deduct the smaller sum from the larger, exhibiting the balance."

On the coming in of the report, at the May term, 1854, eleven exceptions were filed by the defendant, of which the chancellor sustained six. The exceptions which were sustained are as follows:—1. The register erred in receiving evidence of the value of the rents in anything but money. 2. The register erred in allowing $2,35 per acre for the rent of the land, upon the proof which he had before him. 3. The register erred in taking the average rent in corn and cotton, and in money, as the basis on which to determine the value of the rent of said land per acre. 4. The register erred in taking the average rent in corn and cotton as any part of the basis by which to determine said rent. 8. The register erred in allowing damages for lands, upon which he charged rents, in consequence of the depreciation in value from cultivation, and in the amount of consequential damages charged. 11. The register erred in charging more than $1,56 per acre rent *per annum*, that being an average rent under the proof in the cause.

The cause having been re-referred under further instructions, the register made an amended report at the November term, 1854, to which the complainant filed several exceptions, all of which were overruled by the chancellor; but these exceptions require no special notice.

The decretal order rendered at the May term, 1853, and the action of the chancellor in sustaining the defendant's exceptions to the register's first report, and in overruling the complainant's exceptions to the amended report, are the matters now assigned as error.

JOHN T. MORGAN, for the appellant.

L. E. PARSONS and GEO. W. GUNN, *contra.*

STONE, J.—All the questions in this case, except those which arise out of the register's report, fixing the value of the rents and profits, and the extent of damage to the land by clearing it, were settled when this case was heretofore in this court.—Gunn v. Brantley, 21 Ala. 633.

Brantley v. Gunn.

The assignments of error, although six in number, present for our revision,

1. The propriety of the decree of reference, rendered May 19th, 1853;

2. The decretal order on exceptions to the report of the register at May term, 1854, re-referring the case with instructions;

3. The final decree rendered at the November term, 1854, overruling the complainant's exceptions to the amended report, and comfirming said reports.

1. The decree of reference pronounced by the chancellor May 19, 1853, is strictly in accordance with the law of this case, as declared by this court, (see 21 Ala. 633,) and the same is free from error.

2. The decretal order of May term, 1854, disposes of the exceptions, eleven in number, which were filed by the defendant to the first report of the register. The chancellor overruled the exceptions numbered 5, 6, .7, 9, and 10; and hence they are out of view. The 1st, 3d and 4th exceptions may be considered together, as they present substantially one question.

Money is the legal standard of value. The witnesses should have deposed to the money value of the rents; and the effort to prove a custom to receive a portion of the product of the land as a compensation for rent, with a view of showing afterwards what such *modus* or composition would have yielded, was calculated to multiply the issues, and embarrass the investigation. There was no error in sustaining these exceptions.

The 2d and 11th exceptions might have been unconditionally overruled, because each of them included distinct matters, as to a part of which the report was free from error—Franklin v. Keeler, 4 Paige, 382; Pearson v. Knapp, 1 Mylne & Keene, 312. Or, an exception may, in the discretion of the chancellor, be sustained in part, and overruled in part, unless it be so specially framed as to prevent such partial allowance. Hoare v. Johnston, 4 Mylne & Craig, 127. The testimony fully justified the reduction ordered by the chancellor, in the rent of the land described as the Indian old fields.

The 8th exception raises the inquiry, what is the proper

criterion for ascertaining the consequential injury to the lands cleared by Gunn? We are satisfied, that both on principle and authority, the inquiry must be limited to the *effect* on the market value of the land, *at the time* of the unauthorized clearing.—Montgomery & W. P. R. R. Co. v. Varner, 19 Ala. 185; Ivey v. McQueen, 17 Ala. 408; Schuylkill Nav. Co. v. Fair, 4 Watts & Serg. 362; Zimmerman v. Union Canal Co., 1 Watts & Serg. 346. Deterioration from cultivation of the soil might probably enter as an element into the value of the use and occupation; but it is certainly too remote to be considered as the legal sequence of the simple act of felling the timber.

3. The complainant filed six several exceptions to the second, or amended report of the register; and the chancellor, in his final decree at November term, 1854, overruled each of said exceptions. The 3d and 6th exceptions relate to the admissibility of evidence. In each case the objection was general, to a mass of testimony, some portion of which was clearly legal. In such case, this court has repeatedly and uniformly held, that the court is not required to separate the legal from the illegal evidence, but may, without committing a reversible error, either admit or reject the whole.—Murrah v. Branch Bank, 20 Ala. 392; Melton v. Troutman. 15 Ala. 535; Smith v. Zaner, 4 Ala. 99; Gibson v. Hatchett, 24 Ala. 201.

The 1st and 4th exceptions question the sufficiency of the allowance reported by the register, as consequential damages. Looking into the testimony, we find no warrant for disturbing his conclusions on this point.

The 2d and 5th exceptions relate to the allowance as rent for the last year of the account. The testimony does not justify a larger sum, and these exceptions were properly overruled.

There is no error in the record, and the decree of the chancellor is affirmed.

RICE, C. J., not sitting.